

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED PHONE NUMBER (804) 869-8136, THAT IS IN THE CUSTODY OR CONTROL OF AT&T | Case No. 3:25_sw49_ |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Jeremy M. Wasser, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for records and information associated with the cellular device assigned phone number (804) 869-8136 ("TARGET PHONE"), with listed subscriber of Daini PADIA ("PADIA") and is being utilized by Wilmer Alberto ISAOLA-Medina ("ISAOLA-Medina"), whose service provider is AT&T ("PROVIDER"), a wireless telephone service provider headquartered at 208 S. Akard Street, Dallas, Texas 75202, including information about the location of the TARGET PHONE. The TARGET PHONE is described herein and in Attachment A, and the information to be seized is described herein and in Attachment B.

2. Because this warrant also seeks the prospective collection of dialing, routing, addressing, and signaling information transmitted to or from the TARGET PHONE, the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. This Affidavit, the attached Attorney Certification, and the requested warrant therefore include all the information required to be included in an application and order pursuant to that statute. *See* 18 U.S.C. §§ 3122(b), 3123(b).

3. I am a Special Agent with Homeland Security Investigations (HSI) within the Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS) and have been so employed since January 2019. As a Special Agent with HSI, I am authorized to investigate crimes involving violations of federal law, to include: Chapter 73 of Title 18 and Chapter 12 of Title 8 of the United States Code (U.S.C.). Prior to becoming an HSI Special Agent, I served as a Criminal Investigator with the Department of Defense (DOD), Pentagon Force Protection Agency (PFPA) from March 2015 to January 2019. I also served as an ICE Deportation Officer in Richmond, Virginia from December 2009 to March 2015, and a United States Border Patrol Agent in El Paso, Texas from August 2007 to December 2009.

4. I am a graduate of the Federal Law Enforcement Training Center (FLETC) located in Glynco, Georgia. At FLETC, I was trained in, among other things, criminal investigative techniques and violations of U.S. criminal and immigration laws. While working for HSI, I have conducted and participated in various investigations of violations of federal law, including criminal violations of the Immigration and Nationality Act (INA). I am empowered by law to investigate and make arrests for federal violations, including obstruction of immigration proceedings, and to execute warrants issued under the authority of the United States.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that Wilmer ISAOLA-Medina has violated 8 U.S.C. § 1253, Failure to Comply with Removal. ISAOLA-Medina was charged with these crimes on March 03, 2025, and is the subject of an

arrest warrant issued on March 03, 2025. There is also probable cause to believe that ISAOLA-Medina is aware of these charges and has fled. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting ISAOLA-Medina, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

7.  The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. §§ 2711(3) and 3127(2). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. §§ 2711(3)(A)(i), 3127(2)(A)(i).

## PROBABLE CAUSE

8.  The United States, including Homeland Security Investigations (HSI), is conducting a criminal investigation of Wilmer ISAOLA-Medina regarding possible violations of 8 U.S.C. § 1253, Failure to Comply with Removal.

9.  On March 02, 2025, at approximately 2030 hours, HSI Special Agents (SAs) assigned to the Richmond, Virginia office were notified of the escape of four (4) detainees from the Immigration Centers of America (ICA), Farmville Detention Center (FDC) located at 508 Waterworks Road, Farmville, Virginia 23901. FDC is a secure civil detention center contracted by ICE to house foreign nationals in various stages of immigration removal proceedings. FDC is in Farmville, Virginia and falls within the jurisdiction of the U.S. District Court of the Eastern District of Virginia.

10. ICA Farmville investigators reported that between the hours of 1417 and 1446, Wilmer ISAOLA-Medina and three (3) other detainees scaled over the outer perimeter fence surrounding FDC and their whereabouts were unknown. The facilities' video surveillance

3

system captured and confirmed all four (4) detainees successfully landed outside the detention facility without permission or intention of returning thereby obstructing and impeding the proper administration of the law under which any pending proceeding is being had before any department or agency of the United States.

11. ISAOLA-Medina is a citizen and national of Honduras, assigned A#201 754 706, who has a final order of removal from an immigration judge in Los Angeles, California. ISAOLA-Medina was issued a final order of removal by reason of being a member of the any of the classes described in 8 U.S.C. § 1227(a) on July 27, 2023. ERO Officers encountered ISAOLA-Medina during a targeted enforcement action in Richmond, Virginia on February 26, 2025. ERO Officers arrested ISAOLA-Medina due to the order of removal, transported him to FDC, and cleared him for removal to Honduras. ISAOLA-Medina was pending a removal flight to Honduras when he escaped from FDC, thereby taking an action designed to prevent or hamper or with the purpose of preventing or hampering the alien's departure. ISAOLA-Medina is currently a fugitive from justice with an active federal arrest warrant for violation of 8 U.S.C. § 1253, Failure to Comply with Removal.

12. Through the course of the investigation and HSI Special Agents serving several federal subpoenas, it was discovered that a newly activated telephone number, (804) 869-8136 (hereafter the "TARGET PHONE"), was in contact with several associates of ISAOLA-Medina. The TARGET PHONE was activated on March 3, 2025, the day after ISAOLA-Medina escaped from FDC, by Daini PADIA at 4685 Southwood Parkway, Richmond, Virginia 23224 ("4685"). On March 05, 2025, investigators conducting surveillance at 4685 discovered that a Toyota Camry bearing Virginia license plate TKA-8159 was registered to ISAOLA-Medina and parked outside the residence at 4685.

13. On March 4, 2025, a federal subpoena was served on AT&T for subscriber and call detail records linked to the TARGET PHONE. The call detail records revealed that on the day after the escape (March 3, 2025) and the day the cellular device was activated, the TARGET PHONE called telephone number (804) 477-3221 ("3221"). A federal subpoena to AT&T revealed that 3221 was activated on April 27, 2024, and the registered subscriber is Wilmer ISAOLA-Medina with an address of 3925 Hull Street Road, Richmond, Virginia 23224. Additionally, the AT&T report indicated that ISAOLA-Medina was issued a second cellular number (804) 615-0413 ("0413") that was also activated on April 27, 2024. HSI investigators were previously made aware that ICA-Farmville was in possession of a cellular communication device in ISAOLA-Medina's property. HSI Special Agent D. M. Mullins coordinated with FDC investigators to confirm that the cellular device linked to 0413 was currently in ICE custody at FDC. In conclusion, investigators believe 3221 is being utilized by ISAOLA-Medina's significant other or a close family relative and 3221 received a call from the TARGET PHONE the day after ISAOLA-Medina escaped from FDC.

14. ISAOLA-Medina is a fugitive who knows he is being sought by federal investigators. HSI special agents believe the TARGET PHONE was activated by a third party for ISAOLA-Medina to remain undetected to law enforcement and the TARGET PHONE is currently being utilized by ISAOLA-Medina. The aforementioned information shows there is probable cause to collect location information linked to the TARGET PHONE to locate the federal fugitive Wilmer ISAOLA-Medina.

15. In my training and experience, I have learned that AT&T is a company that provides wireless telecommunications services to the general public. A wireless telecommunications provider is a company that offers mobile phone and data services to people.

They do this by connecting users to a network of small areas, called 'cells,' which work together to provide coverage for making calls, sending texts, and using the internet on mobile devices. This is commonly referred to as cellular service. I also know that providers of cellular service have technical capabilities that allow them to collect and generate information that can be used to estimate the locations of the devices to which they provide service through a unique identifier such as a phone number, IMEI, or IMSI. This information includes tower used, antenna used, and timing advance data (as defined below).

16. Cell-site data, also known as "tower/face information" or "cell tower/sector records," identifies the "cell towers" (i.e., antenna towers and antenna systems covering general geographic areas) that received a signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. The geographic density of these towers may vary greatly over a given area with, for example, antenna systems typically located more closely to other network elements in urban areas and further apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides only an approximate general location of the cellular device.

17. Based on my training and experience, I know that wireless providers, including AT&T, collect and retain cell-site data in their normal course of business pertaining to communications to or from cellular devices to which they provide service. I also know that this data often includes: (1) the type of communication or transaction; (2) the date and time of the communication; (3) the telephone numbers involved, if any; (4) the cell tower to which the customer connected at the beginning of the communication; (5) the cell tower to which the

customer was connected at the end of the communication; and (6) the duration of the communication.

18. Specialized location information commonly referred to as timing advance data, also known as "per-call measurement data," estimates the approximate distance of a cellular device from a cellular tower based upon the time it takes for signals to travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data. Based on my training and experience, I know that wireless providers, including AT&T, collect and retain timing advance data in the normal course of their business, apply their own methodology to that data to estimate location (and in some cases, to generate a level of confidence in this estimate). This category of data is known by different names (e.g., LOCDBOR, Range-to-Tower or RTT, and TrueCall). I also know that this timing advance data often includes the date and start- and end time of the associated signal or communication, the cell tower and estimated distance from it, and an estimated location and confidence interval.

19. Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device, unique identifiers and other information about devices used by the subscriber, and other transactional records, in their normal course of business. I also know that wireless

providers such as AT&T can record, decode, and/or capture the dialing, routing, addressing, and signaling information transmitted to or from cellular devices utilizing their wireless service. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the location of the user or users of the TARGET PHONE and may assist in the identification of co-conspirators and/or victims.

## GOVERNMENT REQUESTS

20. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. §§ 2703(c)(1)(a) and Federal Rule of Criminal Procedure 41, and pen register and trap and trace order pursuant to 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture the dialing, routing, addressing, and signaling information transmitted to or from the TARGET PHONE. These authorities are requested without geographic limit, for a period of 45 days from the date of this warrant pursuant to 18 U.S.C. § 3123(c)(1). The proposed search warrant and order does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

21. I further request that the Court direct AT&T to disclose to the government any information described in Section I of Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachments A and B unobtrusively and with a minimum of interference with AT&T's services. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

22. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET PHONE outside of daytime hours.

Respectfully submitted,

Jeremy M. Wasser
Special Agent
Homeland Security Investigations

Sworn before me on March 7th, 2025
Richmond, Virginia

/s/ MRC

Hon. Mark R. Colombell
United States Magistrate Judge
Eastern District of Virginia

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to records and information associated with the cellular device assigned phone number (804) 869-8136, with listed subscriber Daini PADIA ("PADIA") and is being utilized by Wilmer Alberto ISAOLA-Medina (the "TARGET PHONE"), including information about the location of the TARGET PHONE, that is within the possession, custody, or control of AT&T, a wireless telephone service provider headquartered at 208 South Akard Street, Dallas, Texas 75202.

## **ATTACHMENT B**

## **Particular Things to be Seized**

I. **Information to be Disclosed by AT&T (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information:

- A. The following information about the account associated with the TARGET PHONE described in Attachment A:

    1. Names (including subscriber names, user names, and screen names);

    2. Addresses (including mailing addresses, service addresses, residential addresses, business addresses, and e-mail addresses);

    3. Records of session times and durations from March 2, 2025 to Present;

    4. Length of service (including start date) and types of service utilized;

    5. Telephone or instrument numbers (including model type/numbers, phone numbers, IMSIs, IMEIs, MEIDs, SUPIs, and MAC addresses);

    6. Other subscriber numbers or identities, including any temporarily assigned network addresses (including the registration and session Internet Protocol ("IP") addresses with associated port numbers); and

    7. Means and source of payment for such service (including any credit card or bank account number).

- B. All records and other information (not including the contents of real time communications) relating to wire and electronic communications sent or received by the TARGET PHONE described in Attachment A between March 2, 2025 and Present, including:

    1. The date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination phone numbers); call detail records for voice, SMS, MMS, and data; email addresses, and IP addresses; and

2

    2.    Call Detail Records, Voice, SMS, and data, with cell site and/or tower information through which the communications were sent and received; and

    3.    Specialized location data, including timing advance data, per-call measurement data, and other historical location data (including RTT, LOCDBOR, TrueCall, and similar).

C.    For a period of 60 days from the date of this warrant, all non-content dialing, routing, addressing, and signaling information, including all non-content packet switched data, transmitted to or from the TARGET PHONE described in Attachment A, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123 and 3124.

For a period of 30 days from the date of this warrant, all information about the location of the TARGET PHONE described in Attachment A, during all times of day and night, however derived (to include, but not limited to: cell-site location information; timing advance data, per-call measurement data, and triangulation data (including RTT, LOCDBOR, TrueCall, PLU, and similar); and data consistent with Provider's capabilities).

In addition, PROVIDER must furnish the government all information, facility, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with PROVIDER's services.

## II. Information to Be Seized by the Government

All information described above in Section I that will assist in arresting Wilmer ISAOLA-Medina, who was charged with violating 8 U.S.C. § 1253, Failure to Comply with Removal on March 3, 2025, is the subject of an arrest warrant issued on March 3, 2025, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

The government shall compensate PROVIDER for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).